**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

|  |  |
|---|---|
| CARPET COPS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> THE CARPET COPS, LLC et al., <br><br> Defendants. | No.: 3:11-cv-00561-RCJ-VPC <br><br> **ORDER** |

This is a trademark infringement case. Before the Court is Plaintiff's Motion for Default Judgment (ECF No. 10). The Court held an evidentiary hearing, at which Defendants did not appear. The Court grants the motion in part.

## I.   FACTS AND PROCEDURAL HISTORY

Plaintiff Carpet Cops, Inc. is a Nevada corporation with its principle place of business in Douglas County, Nevada. (Compl. 1, ECF No. 1). Defendant The Carpet Cops, LLC is a Utah limited liability company run by Defendant Abram Cade Croney. (*Id.* at 1, 3). Plaintiff provides cleaning services on carpets, flooring, furniture, and upholstery in homes and commercial premises. (*Id.* at 2). Plaintiff has invested "substantial sums in advertising, promoting, and protecting" the name Carpet Cops in order to create a strong association between the name and the services that it provides. (*Id.* at 3). On or around March 25, 2002, Plaintiff registered the

1  trademark "CARPET COPS" ("the Mark") with the United States Patent and Trade Office (PTO)

2  under serial number 76389292. (*Id.*).[1]

3        Plaintiff alleges that Croney visited or resided in Nevada some time after Plaintiff

4  registered the mark, although it is unclear the date or duration of this visit. (*Id.*).  Croney

5  allegedly saw the mark while in Nevada and decided to use it for his Utah business, which is also

6  a carpet cleaning business. (*Id.*).  Plaintiff alleges that Defendant Carpet Cops advertises in

7  Nevada using the infringing mark, "THE CARPET COPS," on the Internet and possibly other

8  sources, although it does not specify what other means of advertisements Defendants use or the

9  geographic location of these advertisements. (*Id.* at 3–4).  Plaintiff alleges that the

10  advertisements confuse its consumer base. (*Id.* at 4).

11        On August 2, 2011, Plaintiff filed the Complaint, alleging federal trademark infringement

12  pursuant to 15 U.S.C. § 1114, federal unfair competition pursuant to 15 U.S.C. § 1125, unfair

13  competition under Nevada common law, and trademark dilution pursuant to NRS § 600.435. (*Id.*

14  at 4–7).  Plaintiff seeks a permanent injunction against Defendants' use of the infringing mark,

15  $100,000 in statutory damages, and attorney's fees and costs. (Mot. for Default J. 4, ECF No.

16  10).  On October 16, 2011, Plaintiff properly served Defendants, with Croney accepting service.

17  (Summons 1–2, ECF No. 6).  Defendants never filed an answer, but apparently contacted

18  Plaintiff to attempt to resolve this matter out of Court. (*See* Invoice 5–6, ECF No. 10-1 (multiple

19  inputs of conferences and phone calls with Defendants to attempt to resolve the matter, starting

20  on September 6, 2011)).  Plaintiff petitioned the Clerk for entry of default pursuant to Rule 55(a)

---

[1] The mark is registered as a "typed drawing," meaning it is "not limited to any particular rendition of the mark and, in particular, [is] not limited to the mark as it is used in commerce." *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 950 (Fed. Cir. 2000).  Therefore, only the name, not the design, is trademarked. *Vornado, Inc. v. Breuer Elec. Mfg. Co.*, 390 F.2d 724, 727 (C.C.P.A. 1968) (holding that any "Vornado" mark is infringing even though it does not have the particular logo Vornado puts on all its goods in commerce).

on January 27, 2012, and the Clerk entered default on January 31. (Mot. for Entry of Clerk's Default 1, ECF No. 7; Clerk's Entry of Default 1, ECF No. 8). On June 1, 2012, Plaintiff filed a motion for default judgment with the Court. (Mot. for Default J. 1). Defendants still have not responded or appeared. (*Id.* at 1–2).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(a) requires a defendant to serve an answer "within 21 days after being served with the summons and complaint." Fed. R. Civ. P. 12(a)(1)(A)(i). If the defendant fails to do so, the plaintiff may start the process of obtaining default judgment under Rule 55. *See McMillen v. J.C. Penney Co.*, 205 F.R.D. 557, 558 (D. Nev. 2002). Obtaining default judgment is a two-step process. *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *see also* Fed. R. Civ. P. 55. First, the clerk must enter the nonresponsive party's default. Fed. R. Civ. P. 55(a). The responsive party must then petition the court for default judgment. *Id.* at 55(b)(2). "[The] grant or denial of a motion for the entry of a default judgment is within the discretion of the court." *Lau Ah Yew v. Dulles*, 236 F.2d 415, 416 (9th Cir. 1956). A court may, "for good cause shown," set aside an entry of default. *McMillen*, 205 F.R.D. at 558 (quoting Fed. R. Civ. P. 55 (c)). Default judgments are generally disfavored, so courts should attempt to resolve motions for default judgment to encourage a decision on the merits. *See id.* (citing *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001)). In order for a court to determine whether to "exercise its discretion to enter a default [judgment]," the court should consider seven factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of [the] plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* (citing *Eitel*, 782 F.2d at 1471–72). All factual allegations in the complaint should be taken as true, except for those relating to damages. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

### III. ANALYSIS

#### A. Motion for Default Judgment

Plaintiff is seeking default judgment, so the Court takes Plaintiff's factual allegations as true when considering the seven *Eitel* factors. *See id.*

##### 1. Possibility of Prejudice to the Plaintiff

The first factor favors default judgment where the plaintiff will suffer prejudice if default judgment is not entered. *See McMillen*, 205 F.R.D. at 558. Simply delaying the resolution of the case is not prejudicial under this standard. *See TCI Grp. Life Ins. Plan*, 244 F.3d at 701. "Rather, 'the standard is whether [the plaintiff's] ability to pursue his claim will be hindered.'" *Id.* (quoting *Falk v. Allen*, 739 F.2d 461, 462 (9th Cir. 1984)); *see also Rockstar, Inc. v. Rap Star 360 LLC*, No. 2:10-cv-179-LRH-RJJ, 2010 WL 2773588, at *2 (D. Nev. July 8, 2010) (citing *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)) (finding prejudice when the defendant did not appear in court before or after the Clerk's entry of default); *MATSO v. Hang D.D.S., Prof. Corp.*, No. 2:09-cv-2242-LRH-RJJ, 2010 WL 2681807, at *2 (D. Nev. July 1, 2010) (same).

Here, Plaintiff will be prejudiced if default judgment is not entered. Since Defendants accepted service but still have not appeared, Plaintiff cannot pursue its claims unless default judgment is entered. Plaintiff also noted at oral argument that it has franchises in California and Wyoming and plans to expand into Utah soon, where the alleged infringement occurred and may continue to occur. Therefore, this factor favors granting default judgment.

**2.     The Merits of the Claims and the Sufficiency of the Complaint**

The second and third factors favor default judgment if the plaintiff makes enough factual allegations to state a claim upon which relief can be granted, in accordance with Rule 8(a). *See Eitel*, 782 F.2d at 1471; *see also Rockstar*, 2010 WL 2773588, at *2 (citing *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978)). Under Rule 8(a), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although detailed factual allegations are not required, the factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. All reasonable inferences that may be drawn from the allegations must be construed in the light most favorable to the nonmoving party. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

In order to succeed on a 15 U.S.C. § 1114 trademark infringement case, a "[p]laintiff must establish that [the defendant's] use of [the p]laintiff's marks causes a likelihood of confusion among the consuming public." *World Mkt. Ctr. Venture, LLC v. Ritz*, 597 F. Supp. 2d 1186, 1189 (D. Nev. 2009). Generally, courts consider eight factors to determine whether the consuming public would confuse two marks. *Id.* at 1189–90 (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)). Those factors are:

> (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.

*Id.* at 1190. Courts are not required to consider all of the factors. *Id.* at 1189.

The first factor favors finding trademark infringement if the mark is distinctive, rather than descriptive. *Sleekcraft*, 599 F.2d at 349. In trademark infringement cases, the same standard for the strength of mark applies to registered and unregistered trademarks. *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1196–97 (9th Cir. 2009) (citing *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204 n.3 (9th Cir. 2000)). In order to prevail on a trademark claim, the mark must be distinctive. *See id.* at 1197 (citing *Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1005 (9th Cir. 1998)). Distinctive marks include suggestive, arbitrary, or fanciful marks, as compared to generic marks that are descriptive. *See id.* The distinction between a suggestive and descriptive mark "is the imaginativeness involved in the suggestion, that is, how immediate and direct is the thought process from the mark to the particular product." *Id.* at 1198 (quoting *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 911 (9th Cir. 1995)). A mark is suggestive if the consumer must make a mental leap after seeing the mark to determine the nature of the product being sold. *See id.* (citation omitted). However, if the mark "define[s] a particular characteristic of the product in a way that does not require any exercise of the imagination," then it is descriptive. *Id.* (quoting *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927 (9th Cir. 2005)). Here, the mark explains that the company is in a business related to carpets. However, the consumer must make a metaphorical mental leap to determine that a "carpet cop" is engaged in carpet cleaning. Therefore, it is a suggestive mark that is entitled to protection.

The second factor examines the proximity of the goods. *See Sleekcraft*, 599 F.2d at 350. The danger to consumers is that they would make an association between the producers of the related goods where no association exits. *See id.* If the goods are complementary, sold to the same class of purchasers, or are similar in use and function, it is easier to prove that there was

1  trademark infringement. *See id.* (citations omitted).  Here, both companies are carpet cleaning
2  businesses, so the goods are very similar.  Therefore, this factor favors finding trademark
3  infringement.
4       The most important factor in this case is the similarity of the marks.  The more similar the
5  appearance, sounds, and meaning of the marks, the more likely there is infringement. *See*
6  *Brookfield Commc'ns v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999).  However,
7  the marks can only be similar if the two companies operate in the same geographical area. *See id.*
8  If the two companies are in completely separate geographical areas, then there is no possibility of
9  consumer confusion, which mitigates the similarity of the marks. *See id.*; *see also Weiner King,*
10  *Inc. v. Wiener King Corp.*, 615 F.2d 512, 522 (C.C.P.A. 1980) (holding that the unregistered
11  company did not infringe on the registered company's rights when the unregistered company
12  started using the mark first, was in a completely different geographical area, and had no plans to
13  expand); *Pinocchio's Pizza Inc. v. Sandra Inc.*, 11 U.S.P.Q.2d 1227, at *2–3 (T.T.A.B. 1989)
14  (holding there is no infringement when the trademark holder operates a small business in
15  Maryland with no intention of expanding, and the other company has expanded steadily in three
16  states for many years).  However, if the unregistered business can be viewed as a franchise of the
17  registered business by consumers, usually because the same group of people would be likely to
18  be in both locations, such as tourists visiting restaurants, then the unregistered business's
19  reputation is still unjustly enhanced by the registered mark. *Stork Rest. v. Sahati*, 166 F.2d 348,
20  358 (9th Cir. 1948) (holding that a club in San Francisco could be seen as a franchise of a New
21  York club because they are both located at popular tourist locations, even though they are in
22  separate parts of the country).  In those cases, the marks are still similar. *See id.*
23
24

Here, the marks are similar. The marks are similar in appearance, sound, and meaning. Also, the two companies will soon operate in the same geographical area once Plaintiff expands into Utah.

The fourth factor is evidence of actual confusion. *Sleekcraft*, 599 F.2d at 352. Actual confusion is very difficult to prove, so the failure to produce such evidence is not dispositive. *See id.* at 352–53. Plaintiff has not provided such evidence in this case.

The fifth factor favors finding infringement when the companies use convergent marketing channels. *See id.* at 353 Plaintiff places much weight on this factor, claiming that both Plaintiff and Defendants use the Internet to advertise their services. (Compl. 4). However, "it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1151 (9th Cir. 2011) (citing *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004)). Therefore, this factor does not favor either party.

The sixth factor favors finding infringement when the goods are less expensive, because consumers are less likely to take the same care as they would on more expensive goods. *Sleekcraft*, 599 F.2d at 353. Plaintiff makes no assertion on the degree of care that consumers take when selecting a carpet cleaning company. Additionally, there is no evidence on how expensive the carpet cleaning is. Therefore, this factor does not favor either party.

The seventh factor favors finding infringement when the defendant company purposefully adopted the trademark holder's mark. *See id.* at 354. Plaintiff alleges that Defendants learned of Plaintiff's mark "while visiting and/or residing in Nevada" and "directly adopted the registered mark from Plaintiff." (Compl. 3 (emphasis omitted)). Assuming

1  Plaintiff's allegations are true, this factor weighs heavily in favor of finding trademark
2  infringement.
3        Finally, the eighth factor favors finding trademark infringement when there is a "strong
4  possibility" that either party may expand its business to compete with the other. *See Sleekcraft*,
5  599 F.2d at 354.  Plaintiff alleges that it "plans to expand its operations in Nevada, as well as
6  other states." (Compl. 3).
7        The Court finds that the marks are similar based on the factors above.
8        Plaintiff also claims there was "federal unfair competition" pursuant to 15 U.S.C. §
9  1125(a). (Compl. 5).  This claim is subject to the same eight-factor test as the § 1114 claim. *Jada*
10  *Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2007) (citing *Century 21 Real Estate Corp.*
11  *v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988)).  Therefore, Plaintiff is entitled to relief under §
12  1125(a), as well.
13        Plaintiff also claims that Defendant participated in "unfair competition," in violation of
14  Nevada common law. (Compl. 6).  The test for unfair competition under the common law is
15  identical to test used for federal trademark infringement. *See Mine O' Mine, Inc. v. Calmese*, No.
16  2:10-cv-43-KJD-PAL, 2011 WL 2728390, at *8 (D. Nev. July 12, 2011).  Therefore, Plaintiff is
17  entitled to relief under Nevada common law.
18        Finally, Plaintiff claims Defendants diluted the market under NRS § 600.435. (Compl. 7).
19  The statute only protects famous marks, similar to 15 U.S.C. § 1125. *WEC Holdings, LLC v.*
20  *Juarez*, No. 2:07-cv-137, 2008 WL 345792, at *4 n.1 (D. Nev. Feb. 5, 2008) (Sandoval, J.).
21  Plaintiff does not allege that the mark is famous in the state of Nevada.  Therefore, the Court will
22  not grant default judgment on the basis of NRS § 600.435.
23  ///
24

### 3.     The Sum of Money at Stake

The fourth factor mitigates against default judgment when there is a substantial amount of money involved. *See Eitel*, 782 F.2d at 1471.  The court compares "the amount of money at stake in relation to the seriousness of [the d]efendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176.  Here, Plaintiff seeks injunctive relief as well as $100,000.  Because the amount of money at stake is not disproportionate to the seriousness of the conduct – willful trademark infringement – this factor does not mitigate against default judgment.

### 4.     The Possibility of a Dispute Concerning Material Facts

The fifth factor mitigates against default judgment where there is a "possibility of a dispute concerning material facts." *Eitel*, 782 F.2d at 1471–1472.  After oral argument, there appears to be little chance of a legitimate dispute concerning material facts.

### 5.     Excusable Neglect

The sixth factor favors default judgment where the nonresponsive party's default was not due to excusable neglect. *See Eitel*, 782 F.2d at 1472.  There was no excusable neglect in this case because Defendants were served on October 18, 2011, the Clerk entered default on January 31, 2012, and Defendants still have not appeared in the case. *See United States v. Maris*, No. 2:10-cv-1337, 109 A.F.T.R.2d 2012-775, at *8 (D. Nev. Feb. 2, 2012) (Jones, C.J.).  Therefore, this factor favors granting default judgment.

### 6.     The Strong Policy Favoring Decisions on the Merits

There is a strong policy in the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1472.  Yet, the "mere existence of [Rule 55(b)] indicates that this preference, standing alone, is not dispositive." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (internal quotation marks omitted).  When reasonably possible, a case should be decided on the merits.

*See Eitel*, 782 F.2d at 1472 (citing *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)).  Therefore, if "movant has a meritorious defense, doubt, if any, should be resolved" against default judgment. *Pena*, 770 F.2d at 814 (citation omitted).  After weighing the seven factors, the Court finds that default judgment is appropriate.

### B.     Damages

Damages for trademark infringement 15 U.S.C. § 1114 are set in 15 U.S.C. § 1117. *See* 15 U.S.C. § 1117(a).  Under 15 U.S.C. § 1117(b), Plaintiff would be entitled to recover three times Defendant's profits or the damages sustained by Plaintiff, whichever amount is greater.  Plaintiff would also be entitled to attorney's fees under that subsection. *Id.*  In the alternative, Plaintiff may elect to recover statutory damages under 15 U.S.C. § 1117(c).  These damages are awarded on principles of equity, and the court may award attorney's fees and costs only in "exceptional cases." 15 U.S.C. § 1117(a).  In this case, Plaintiff asks for injunctive relief, statutory damages pursuant to 15 U.S.C. § 1117(c), and attorney's fees and costs.

### 1.     Injunctive Relief

Plaintiff is entitled to a permanent injunction against Defendant from using the mark pursuant to 15 U.S.C. § 1114 and Nevada common law.  The Court has the "power to grant injunctions according to the rules of equity and upon such terms as the Court may deem reasonable, to prevent" a trademark violation. *PepsiCo, Inc.*, 238 F. Supp. at 1177 (quoting 15 U.S.C. § 1116(a)).  Since Plaintiff alleges that Defendants continue to use its Mark, and Defendants have not appeared to allege otherwise, an injunction against Defendants preventing them from using the Mark, or a similar imitation of the Mark, in areas of direct competition with Plaintiff is appropriate.

///

### 2.     Statutory Damages

Plaintiff asks for statutory damages at $50,000 per Defendant plus attorney's fees and costs. The basis for the $50,000 figure is an unreported case from the Southern District of New York. (Mot. for Default J. 3, ECF No. 10); *see also Cartier Int'l v. Ben-Menachem*, No. 06 Civ. 3917, 2008 WL 64005 (S.D.N.Y. Jan. 3, 2008). However, even under Plaintiff's analysis, the Court would only be entitled to give $50,000 "for each infringing mark." (Mot. for Default J. 3). Since there is only one infringing mark in this case, Plaintiff would be entitled to up to $50,000 in statutory damages.

If the use of the counterfeit mark is not willful, the Court may award damages from $1,000 to $200,000. 15 U.S.C. § 1117(c)(1). If the use is willful, the Court may award up to $2,000,000. 15 U.S.C. § 1117(c)(2). The Court may consider a "wide range of factors, including [but not limited to] the defendants' financial situation, their naivete, their failure to resolve the trademark violations through settlement, and the extent of the infringement, in setting the statutory damage award." *K & N Eng'g, Inc. v. Bulat*, 259 Fed. Appx. 994, 995 (9th Cir. 2007); *N.Y.-N.Y. Hotel & Casino, LLC v. Katzin*, No. 2:09-cv-2139, 2010 WL 4386497, at *5 (D. Nev. Oct. 27, 2010) (George, J.) (awarding $1,000 in damages where the conduct was not willful and the only damage was that possibly some customers would use the infringing domain name to link to competitors). While damages are case-specific, one court awarded $25,000 to the plaintiff when the defendant acted with bad faith, but there was scant evidence that the defendant profited from the endeavor. *Two Plus Two Publ'g v. Boyd*, No. 2:09-cv-2318-KJD-VCF, 2012 WL 724678, at *5 (D. Nev. Mar. 1, 2012).

This case is similar to *Boyd*. There is evidence that Defendants acted willfully, allowing the Court to award damages up to $2,000,000. However, Plaintiff did not produce any evidence

of how Defendants profited from infringing on the trademark, and in fact noted that Defendants had stopped using the Mark and had opened a new carpet cleaning company that did not infringe. Therefore, the Court will grant only $2500 in statutory damages.

### 3. Attorney's Fees

Plaintiff asks for reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1117(a). (Mot. for Default J. 3). It has attached a detailed list of its fees and costs to the Motion for Default Judgment, which add up to $3,812.75 attorney's fees and $584 in costs. (Invoice 4–7).

In exceptional cases, the court may award reasonable attorney's fees to the prevailing party. 15 U.S.C. § 1117(a). Generally, attorney's fees are only available when the defendant's conduct is "malicious, fraudulent, deliberate, or willful." *Ricks v. BMEzine.com, LLC*, 727 F. Supp. 2d 936, 967 (D. Nev. 2010) (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002)). Here, Defendants' conduct was willful because Defendants began infringing on Plaintiff's mark after Croney saw it in during a visit to Nevada. (Compl. 3). Plaintiff submitted a list of charges, and they appear to be reasonable. (*See* Invoice 4–7). Therefore, the Court will award reasonable attorney's fees and costs.

///
///
///
///
///
///
///
///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Default Judgment (ECF No. 10) is GRANTED in part.  Plaintiff is entitled to $2500 in statutory damages and $4396.75 in fees and costs, jointly and severally against Defendants.

IT IS FURTHER ORDERED that the Clerk shall enter judgment consistent with this Order and close the case.

DATED: This 6th day of September, 2012.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE